## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SEAN DOYLE, et al.,** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-12030-DJC** |
| ) | |
| **FEDERAL EXPRESS CORPORATION,** ) | |
| **successor by merger to FEDEX GROUND** ) | |
| **PACKAGE SYSTEM, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

| | |
|---|---|
| **CALVIN ALEYNE, et al.,** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-12031-RGS** |
| ) | |
| **FEDERAL EXPRESS CORPORATION,** ) | |
| **successor by merger to FEDEX GROUND** ) | |
| **PACKAGE SYSTEM, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

**CASPER, C. J.**                                                            **January 21, 2026**

## I.    Introduction

After dismissal of two FLSA collective actions, 183 Plaintiffs (collectively, "Plaintiffs")

filed two separate actions against Defendant Federal Express Corporation, successor by merger to

Defendant FedEx Ground Package System, Inc. (collectively, "FedEx"), alleging that FedEx failed

to pay overtime wages owed to Plaintiffs in violation of the Fair Labor Standard Act ("FLSA"),

1

29 U.S.C. § 201, *et seq.* (Count I), and seeking declaratory judgment that FedEx is Plaintiffs' employer under FLSA (Count II).[1]  Doyle v. FedEx Ground Package Systems, Inc. et al., 24-cv-12030-DJC ("Doyle"), Doyle, D. 14; Alleyne et. al. v. Federal Express Corporation, 24-cv-12031-RGS ("Alleyne"), Alleyne, D. 21.  These actions have been consolidated for pretrial proceedings. Alleyne, D. 68; Doyle, D. 71.  FedEx has moved to dismiss both actions under Fed. R. Civ. P. 12(b)(6).  Doyle, D. 67; Doyle, D. 76.  FedEx has also moved to sever Plaintiffs' claims under Fed. R. Civ. P. 21 and transfer the cases.  Doyle, D. 88.  For the reasons stated below, the Court ALLOWS FedEx's motions to dismiss, and dismisses Count I of both actions without prejudice and with leave to amend, and Count II of both actions with prejudice.  Doyle, D. 67; Doyle, D. 76.  The Court ALLOWS FedEx's motion to sever, dismissing all Plaintiffs except Lead Plaintiffs Doyle and Alleyne, and DENIES FedEx's motion to transfer Doyle and Alleyne to another Division of this Court.  Id.

## II.    Legal Standard

### A.    Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to

---

[1] In their opposition, the Doyle Plaintiffs state that "Plaintiffs do not oppose dismissing their declaratory relief claim, as none currently works for FedEx."  Doyle, D. 69 at 7.  Accordingly, the Court dismisses Count II of the Doyle FAC on this ground but addresses Plaintiffs' opposition to FedEx's motion to dismiss the same count, Count II, in Alleyne below.

distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit.  Id.  Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  If they do not, then dismissal is warranted.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III.    Factual Background

For the purpose of considering the motions to dismiss, the Court confines itself to and accepts as true all well-pleaded facts in the complaints, save for considering "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

For the purpose of resolving FedEx's motion to sever and transfer, Doyle, D. 88, the Court may consider the facts set forth by the parties.  See, e.g., OsComp Sys., Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 264 & n.1 (D. Mass. 2013).  The Court, therefore, considers the FACs and the exhibits referenced in and attached to FedEx's memorandum in support of its motion to sever and transfer, Doyle, D. 89, Plaintiffs' opposition, Doyle, D. 90, and FedEx's Reply, Doyle, D. 99, for this motion.

FedEx operates a package pickup and delivery business that services customers throughout the United States.  Doyle, D. 14 ¶ 48; Alleyne, D. 21 ¶ 155.  FedEx hires thousands of package delivery drivers by contracting with "independent service providers" ("ISPs").  Doyle, D. 14 ¶ 49; Alleyne, D. 21 ¶ 156.  ISPs are typically responsible for three or more FedEx delivery routes, and delivery drivers working under ISPs ("ISPs delivery drivers") "typically work full-time and exclusively as FedEx drivers," Doyle, D. 14 ¶ 55; Alleyne, D. 21 ¶ 162, but are classified as "employees" of the ISPs, Doyle, D. 14 ¶ 52; Alleyne, D. 21 ¶ 159.  ISPs delivery drivers perform

their delivery work on "strict and predictable schedules pursuant to FedEx's same-day delivery requirements," which are dictated by the volume of packages that FedEx requires them to deliver each day on their routes. Doyle, D. 14 ¶ 58; Alleyne, D. 21 ¶ 165. FedEx requires ISPs delivery drivers to, among other standards and requirements, "deliver[] FedEx's packages to FedEx customers while wearing FedEx uniforms and driving vehicles bearing FedEx's logos and color scheme" and "work[] out of FedEx-owned and managed terminals throughout the country, where FedEx managers, package handlers, and other FedEx employees oversee and manage the package delivery operations." Doyle, D. 14 ¶¶ 55-56; Alleyne, D. 21 ¶¶ 162-63; see Doyle, D. 14 ¶ 59(a)-(f); Alleyne, D. 21 ¶ 166(a)-(f). Additionally, FedEx monitors ISPs delivery drivers' job performance and customer feedback and "has the authority to require its ISPs to terminate the drivers working under them if FedEx believes they should be terminated." Doyle, D. 14 ¶ 59(g)-(i); Alleyne, D. 21 ¶ 166(g)-(i).

Plaintiffs were ISPs delivery drivers for FedEx in Massachusetts for some period between 2000 and 2024. Doyle, D. 14 ¶¶ 3-40, 50; Alleyne, D. 21 ¶¶ 3-147, 157. During their employment, Plaintiffs have allegedly "routinely worked more than forty hours per week" and "have driven trucks weighing less than 10,001 pounds," Doyle, D. 14 ¶¶ 62-63; Alleyne, D. 21 ¶¶ 169-70, but have not received overtime pay for their work beyond 40 hours per week. Doyle, D. 14 ¶ 64; Alleyne, D. 21 ¶ 171; see Doyle, D. 14 ¶ 49(c)-(d); Alleyne, D. 21 ¶ 156(c)-(d).

## IV.   Procedural History

As the procedural history preceding the instant actions has particular bearing on FedEx's present motion to sever, Doyle, D. 88, the Court repeats the relevant history here. See Doyle, D. 62 at 2-3. In 2017, Plaintiffs' counsel in both actions, Lichten & Liss-Riordan, P.C. ("LLR"), filed an FLSA collective action against FedEx, Roy v. FedEx Ground Package System, Inc., No. 17-cv-30116-KAR (D. Mass.). The case was conditionally certified by the court on November 27, 2018,

4

resulting in approximately 550 individuals opting into the case. Doyle, D. 28 at 7; Order, Roy, No. 17-cv-30116-KAR (D. Mass. Nov. 27, 2018), D. 64.[2] On August 18, 2023, FedEx moved to decertify the conditional class. Mot., Roy, 17-cv-30116-KAR (D. Mass. Aug. 18, 2023), D. 347. On March 29, 2024, the court granted the motion and decertified the class. Order, Roy, 17-cv-30116-KAR (D. Mass. Mar. 29, 2024), D. 408. Following decertification, LLR asked for, and received, over FedEx's objection, a 120-day tolling period to allow the dismissed opt-ins to file their claims individually. See Doyle, D. 28 at 11.

On August 6, 2024, LLR filed the two instant actions with thirty-eight (38) Plaintiffs in Doyle and 145 Plaintiffs in Alleyne. Doyle, D. 1; Alleyne, D. 1. The combined 183 Plaintiffs in Doyle and Alleyne are mostly opt-ins from Roy. Doyle, D. 89 at 6; see Doyle, D. 75 at 13 (noting that all 38 Doyle Plaintiffs were Roy opt-ins); Doyle, D. 87 at 14 n.5 (noting that 132 Plaintiffs in Alleyne were Roy opt-ins, 8 Plaintiffs were Claiborne opt-ins and 5 neither opted into Roy nor Claiborne). The Doyle Plaintiffs filed their operative FAC on September 25, 2024, Doyle, D. 14, and the Alleyne Plaintiffs filed their operative FAC on October 3, 2024, Alleyne, D. 21. On August 14, 2025, FedEx moved to dismiss the Doyle FAC. Doyle, D. 67. On September 3, 2025, the consolidation of these two actions for all pretrial proceedings was allowed, Alleyne, D. 68; see Doyle, D. 71, and FedEx subsequently moved to dismiss the Alleyne FAC on September 10, 2025, Doyle, D. 76. On October 13, 2025, FedEx then moved to sever and transfer both cases. Doyle,

---

[2] Concurrently, LLR also represented a collective of approximately 30,000 opt-ins pursuing identical claims against FedEx in the Western District of Pennsylvania, Claiborne v. FedEx Ground Package System, Inc., 18-cv-01698-RJC (W.D. Pa.), which was conditionally certified on September 30, 2019. Doyle, D. 38 at 8-9. On April 30, 2024, the plaintiffs in that case voluntarily decertified their collective action and the court subsequently granted their request to dismiss all opt-ins without prejudice and toll the statute of limitations for them to pursue their claims individually. Id. at 9. LLR has since filed several separate lawsuits including, as relevant here, Claiborne v. FedEx Ground Package Sys., Inc., No. 18-cv-1698-RJC (W.D. Pa.) and Atwood v. Fed. Express Corp., No. 24-cv-1127-RJC (W.D. Pa.).

D. 88.  The Court heard the parties on the pending motions and took these matters under advisement.  <u>Doyle</u>, D. 100.  The Court now turns to FedEx's motions.

## V.     Discussion

### A.     <u>Dismissal of Count I:  Unpaid Overtime Under FLSA Without Prejudice</u>

In Count I, Plaintiffs allege that FedEx violated the FLSA by failing to provide overtime pay for hours worked beyond forty hours per week.  <u>Doyle</u>, D. 14 ¶ 68; <u>Alleyne</u>, D. 21 ¶ 175.  FLSA requires an employer to compensate its employees "not less than one and one-half times the regular rate at which [the employee] is employed" for each hour worked in excess of 40 hours per workweek unless those employees are exempt.  29 U.S.C. §§ 207(a)(1), 213.  "The basic elements of a FLSA claim are that (1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and . . . (3) plaintiffs 'performed work for which they were under-compensated.'"  <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 43 (1st Cir. 2013) (quoting <u>Pruell v. Caritas Christi</u>, 678 F.3d 10, 12 (1st Cir. 2012)).  "A claim for unpaid overtime wages must demonstrate that the plaintiffs were employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'"  <u>Id.</u> at 43-44 (citing 29 U.S.C. § 207(a)(1); <u>Román v. Maietta Const., Inc.</u>, 147 F.3d 71, 75 (1st Cir. 1998)).  FedEx moves to dismiss on the ground that Plaintiffs fail to plausibly allege that FedEx violated FLSA.

"The existence of the FLSA cause of action . . . is dependent on a threshold finding that [p]laintiffs are employees of [defendant] under the FLSA."  <u>Hamilton v. Partners Healthcare Sys., Inc.</u>, 209 F. Supp. 3d 379, 389 (D. Mass. 2016), <u>aff'd</u>, 879 F.3d 407 (1st Cir. 2018) (quotation marks omitted); 29 U.S.C. § 216(b).  FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and "employ" as "to suffer or permit to work," <u>id.</u> § 203(g).  The question of whether FedEx is

Plaintiffs' employer within the meaning of FLSA under the controlling authority in this Circuit is a legal question, not a fact question, Costello v. Molari, Inc., No. 17-cv-30184-KAR, 2019 WL 6170864, at *4 (D. Mass. Nov. 20, 2019) (citing Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995) (stating that whether a defendant is an "employer" pursuant to 29 U.S.C. § 203(d) is a question of law)). As such, Plaintiffs' conclusory allegations that FedEx is their joint employer, see Doyle, D. 14 ¶ 53; Alleyne, D. 21 ¶ 160, is not dispositive and is not afforded any weight, Hamilton, 209 F. Supp. 3d at 390 (noting that "Plaintiffs make certain conclusory statements, to which [the court] give[s] no weight"); see Schatz, 669 F.3d at 55. As this inquiry is a threshold question to Plaintiffs' FLSA claim, the Court must first consider it.

1.    *Plaintiffs Fail To Sufficiently Allege They Are FedEx Employees Under FLSA*

In assessing "whether an employment relationship exists" under FLSA, courts apply an "economic reality" test. Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998) (quoting Aimable v. Long & Scott Farms, 20 F.3d 434, 439 (11th Cir. 1994)); see Pereira v. Est. of Oliveira, No. 24-cv-12744-ADB, 2025 WL 1918111, at *3 (D. Mass. July 11, 2025) (noting that "[c]ourts also use the 'economic reality' test to determine whether an entity is a joint employer") (citing Baystate, 163 F.3d at 675). That test examines "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Baystate, 163 F.3d at 675; see Pereira, 2025 WL 1918111, at *3 (citing Danio v. Emerson Coll., 963 F. Supp. 61, 63 (D. Mass. 1997) (noting that "[u]nder this test, courts examine the purported employer's job description, financial interest in the workplace, involvement in decisions affecting the plaintiff's employment terms, conditions and compensation, and relative operational control in the workplace")). The first and second factors "address the

extent of a putative employer's control over the nature and structure of the working relationship," while the third and fourth factors "address the extent of a putative employer's control over the economic aspects of the working relationship." Baystate, 163 F.3d at 675-76. "[T]he totality of the circumstances, and not any one factor" determines whether an individual can be held personally liable as an employer. Id. at 676.

a)    Power to Hire or Fire

Plaintiffs allege that ISPs hire delivery drivers for FedEx, Doyle, D. 14 ¶ 52; Alleyne, D. 21 ¶ 159, and allege no facts from which to infer that FedEx has the power to hire ISPs' delivery drivers. Plaintiffs' allegations thus do not support the inference that FedEx has the power to hire ISPs' delivery drivers. As to FedEx's power to fire Plaintiffs, Plaintiffs allege that "[c]ustomer comments and complaints regarding the drivers' job performance are made directly to FedEx, who uses its own discretion on what action to take," "FedEx closely monitors the job performance of the drivers, tracking whether each delivery is 'successful' based on FedEx's own standards," and FedEx "has the authority to require its ISPs to terminate the drivers working under them if FedEx believes they should be terminated." Doyle, D. 14 ¶ 59(g)-(i); Alleyne, D. 21 ¶ 166(g)-(i). The Court understands Plaintiffs' allegation that FedEx "has the authority to require its ISPs to terminate the drivers working under them if FedEx believes they should be terminated," Doyle, D. 14 ¶ 59(h); Alleyne, D. 21 ¶ 166(h), read in conjunction with the allegations that FedEx monitors customer comments and complaints as well as delivery drivers' job performance, Doyle, D. 14 ¶ 59(g), (i); Alleyne, D. 21 ¶ 166(g), (i), to allege that FedEx has the authority to require ISPs to terminate drivers who do not meet its quality control standards. See McCatty v. Stallion Express, LLC, No. 24-cv-10224-MRG, 2025 WL 1095926, at *5 (D. Mass. Mar. 14, 2025), report and recommendation adopted, No. 24-cv-10224-MRG, 2024 WL 5517049 (D. Mass. Mar. 31, 2025).

This allegation is insufficient to raise a reasonable inference that FedEx "had such an ability to fire [ISPs delivery drivers] as to be a joint employer." See id.; see also id. (citing Jacobson v. Comcast Corp., 740 F. Supp. 2d 683, 689 (D. Md. 2010) (finding that cable company's ability to advise installation company with which it contracted that installation company's technicians who were not meeting cable company's standards were no longer authorized to perform installation work on behalf of cable company – in effect a "firing" – was done only in the context of quality control and did not weigh in favor of finding cable company an employer of technician for purposes of the FLSA)). This is particularly so because "[the ISPs] had full authority to maintain the employment of [delivery drivers] who met [FedEx]'s standards; conversely, [the ISPs] had the authority to fire any [driver] it believed should be fired even if that courier met [FedEx]'s standards." Id.

As Plaintiffs' allegations support neither the inference that FedEx has the power to fire ISPs delivery drivers nor to hire ISPs delivery drivers, this factor weighs against the inference that FedEx was Plaintiffs' joint employer.

b)      Supervision and Control of Work Schedules or Conditions of Employment

Plaintiffs allege that FedEx "assigns the specific packages that the delivery drivers must deliver and when the packages must be delivered" and requires ISPs delivery drivers to "have specific equipment on their van when they perform deliveries for FedEx," "wear a uniform bearing FedEx's logos and color scheme and to maintain personal appearance standards established by FedEx," "place specific signage on their vans bearing FedEx's name and logo," "scan all assigned packages with a specific scanner designated by FedEx upon loading each morning and upon delivery," "begin and end each day at a designated terminal operated by FedEx," Doyle, D. 14 ¶ 59(a)-(f); Alleyne, D. 21 ¶ 166(a)-(f); see Doyle, D. 14 ¶ 55; Alleyne, D. 21 ¶ 162, and "work[] out of FedEx-owned and managed terminals throughout the country, where FedEx managers,

package handlers, and other FedEx employees oversee and manage the package delivery operations," Doyle, D. 14 ¶ 56; Alleyne, D. 21 ¶ 163.  This factor weighs in favor of an inference that FedEx was Plaintiffs' joint employer.

c)    Determination of the Rate and Method of Payment & Maintenance of Employment Records

As to factors three and four, however, Plaintiffs make no allegation that FedEx determined Plaintiffs' rate and method of payment or that FedEx maintained their employment records.  As such, these factors weigh against an inference that FedEx was Plaintiffs' joint employer.

On balance, the Baystate factors weigh against an inference that FedEx was Plaintiffs' joint employer.  Accordingly, the Court concludes that Plaintiffs have failed to meet their burden of alleging sufficient facts to create a plausible inference that FedEx was Plaintiffs' joint employer.

Plaintiffs' reliance upon the magistrate judge's Rule 11 recommendation in Alleyne which suggested that the Alleyne FAC "'pleads sufficient facts to plausibly infer that [FedEx] is [Plaintiffs'] joint employer and that [Plaintiffs were] not paid for [their] overtime work in violation of the FLSA,'" Alleyne, D. 62 at 5-6 (citing Edmonds v. Amazon.com, Inc., No. C19-1613JLR, 2020 WL 1875533, at *8 (W.D. Wash. Apr. 15, 2020)) (alteration in original); see Doyle, D. 69 at 6; Doyle, D. 80 at 8, is misplaced.  As Judge Stearns's order adopting that recommendation made clear, "[t]he Magistrate Judge's suggestion that the [Alleyne] Amended Complaint satisfies the requirements of Rule 12(b)(6) is *dicta* at best and not a binding ruling on the merits of the issue." Alleyne, D. 67 at 1-2 n.1.

Moreover, any reliance on Edmonds to support the claim that Plaintiffs have plausibly alleged sufficient facts to infer that FedEx is Plaintiffs' joint employer in the present actions is also misplaced.  In Edmonds, the court analyzed the question of whether Amazon was the employer of delivery drivers under both the Ninth Circuit's four-factor economic reality test in Bonnette v. Cal.

10

Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983) and the Ninth Circuit's eight-factor economic test in Torres-Lopez v. May, 111 F.3d 633, 641 (9th Cir. 1997). Edmonds, 2020 WL 1875533, at *4. Neither test is controlling in the First Circuit. Although the Bonnette test addresses the same factors as the First Circuit's Baystate test, compare Bonnette, 704 F.2d at 1470, with Baystate, 163 F.3d at 675, the facts in Edmonds are distinguishable from the present cases. While the majority of the Bonnette factors in Edmonds favored the finding that Amazon was the plaintiff's joint employer, Edmonds, 2020 WL 1875533, at *4-5, as explained above, that is not the case here. Further, the Edmond court's decision rested on the plaintiff satisfying a combination of some of the twelve Bonette and Torres-Lopez factors analyzed, which altogether weighed in favor of the inference that Amazon was the plaintiff's employer. Id. at *6. Here, Plaintiffs allege facts sufficient to satisfy only one of the four factors analyzed in this Circuit. In short, these references are unavailing to Plaintiffs and do nothing to cure the dearth of allegations that support a plausible allegation that FedEx is their employer under the First Circuit's binding authority.

As Plaintiffs have not plausibly alleged that they are FedEx employees within the meaning of FLSA, Plaintiffs may not maintain a FLSA claim against FedEx. See Hamilton, 209 F. Supp. 3d at 389; Cavallaro v. UMass Mem'l Health Care, Inc., 971 F. Supp. 2d 139, 150 (D. Mass. 2013) (dismissing FLSA claim for failure to allege sufficient facts to provide basis for finding that an employer-employee relationship existed between the parties).

2.    *Plaintiffs Also Fail to Sufficiently Allege Unpaid Overtime and Knowledge*

Plaintiffs' failure to sufficiently allege an employment relationship with FedEx ends their FLSA inquiry. The Court, however, addresses the remaining elements of Plaintiffs' FLSA unpaid overtime claim for the sake of completeness. As to the second element, interstate commerce, see Manning, 725 F.3d at 43, "[a]n employee enjoys the protections of the FLSA's overtime pay requirements only when either the employee individually or the employer's enterprise as a whole

11

is 'engaged in commerce or in the production of goods for commerce.'" Martinez v. Petrenko, 792 F.3d 173, 175 (1st Cir. 2015) (citing 29 U.S.C. § 207(a)(1)). Here, Plaintiffs have plausibly alleged that FedEx's enterprise is engaged in interstate commerce, see Doyle, D. 14 ¶ 48; Alleyne, D. 21 ¶ 153, thus the second element of their FLSA claim is satisfied. To satisfy the third element, each Plaintiff must prove both that they incurred unpaid overtime for compensable work and that FedEx "had actual or constructive knowledge that [the employee] was working overtime." Prime Communications, Inc. v. Sylvester, 34 Mass. App. Ct. 708, 712 (1993).

a)    Unpaid Overtime

(1)    Protected Work Under FLSA's Overtime Provisions

As an initial matter, FedEx contends that Plaintiffs cannot avail themselves of FLSA's overtime provisions because they are exempted from FLSA's protections under the Motor Carrier Act ("MCA"). Doyle, D. 68 at 14-17; Doyle, D. 77 at 14-16. Although time spent performing deliveries for an employer is "clearly compensable" work under FLSA, see Lawson v. Grubhub, Inc., 665 F. Supp. 3d 1108, 1127 (N.D. Cal. 2023), MCA exempts from FLSA's overtime work protection "an employee who works more than forty hours a week but drives a vehicle with a [gross vehicle weight ratings ("GVWR")] of more than 10,000 pounds ('heavy vehicles')." Roy, 2024 WL 1346999, at *3 (citing Carley v. Crest Pumping Techs., LLC, 890 F.3d 575, 579 (5th Cir. 2018)); see 29 U.S.C. § 213(b)(1). The SAFETEA-LU Technical Corrections Act of 2008 ("TCA") provides an exception to the MCA exemption such that "an employee is covered under the FLSA overtime provisions if the employee works 'in whole or in part' driving a light vehicle," i.e., a vehicle with a GVWR of less than 10,0001 pounds. Roy, 2024 WL 1346999, at *3 (citing SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(a), (c), 122 Stat. 1572, 1621 (2008); O'Brien v. Lifestyle Transp., Inc., 956 F. Supp. 2d 300, 305 (D. Mass. 2013)). "In determining whether an employee falls within the scope of an FLSA exemption, '[t]he

12

employer . . . bears the burden of establishing that its employees are exempt, and because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them.'"  O'Brien, 956 F. Supp. 2d at 304 (quoting DeJesus–Rentas v. Baxter Pharmacy Services Corp., 400 F.3d 72, 74 (1st Cir. 2005) (internal quotation and quotation marks omitted)).

FedEx argues that Plaintiffs have failed to allege that they have driven light vehicles "in whole or in part" during their tenure as ISPs delivery drivers and thus are not covered employees under FLSA.  Doyle, D. 68 at 14-17; Doyle, D. 77 at 14-16.  As other sessions of this Court have recognized, courts have interpreted the phrase "in whole or in part" such that Plaintiffs can demonstrate that they drove light vehicles "in whole or in part" by alleging either that they:  (1) performed their delivery duties while driving light vehicles for the entire week or part of the week in which they worked over forty hours, see Roy, 2024 WL 1346999, at *3 (citing Roche v. S-3 Pump Serv., Inc., 154 F. Supp. 3d 441, 446 (W.D. Tex. 2016)), or (2) worked for FedEx at a time when FedEx "ha[d] a mixed fleet of vehicles" and operated light vehicles "'more than a *de minimis* amount of time during [their] tenure with [FedEx]," see id. (citing Berry v. Best Transp., Inc., Case No. 16-cv-00473-JAR, 2018 WL 6830097, at *6-7 (E.D. Mo. Dec. 17, 2018) (collecting cases); Childress v. Ozark Delivery of Mo. LLC, 95 F. Supp. 3d 1130, 1137 (W.D. Mo. 2015)); see also O'Brien, 956 F. Supp. 2d at 306 (applying TCA exception where employer had mixed fleet of light and heavy vehicles and plaintiff alleged they drove light vehicles "'most or all workweeks'") (quotation omitted).

Here, Plaintiffs allege that they "have worked more than forty hours per week delivering packages for FedEx" for which they were not paid overtime and that they "drive, in whole or in part, vehicles with a [GVWR] of 10,001 pounds or less."  Doyle, D. 14 ¶ 49(c)-(d); Alleyne, D. 21

¶ 156(c)-(d).  Plaintiffs' assertion that they drove light vehicles "in whole or in part" is a legal conclusion that is not afforded any weight to support their claim.  See Schatz, 669 F.3d at 55.  As to the first interpretation of "in whole or part," as FedEx notes, Doyle, D. 68 at 14-17; Doyle, D. 77 at 14-16, Plaintiffs' allegations do not identify any particular week for any Plaintiff in which they allege that they both drove a light vehicle and worked over forty hours for which they were not paid overtime, id.; see Doyle, D. 14 ¶ 49(c)-(d); Alleyne, D. 21 ¶ 156(c)-(d); see also Roy, 2024 WL 1346999, at *3 (noting an employee is entitled to overtime pay for hours worked over forty in the workweek when they drove a light vehicle) (citing Roche, 154 F. Supp. 3d at 446).  Thus, they fail to plausibly allege that their work is compensable under FLSA because they drove light vehicles during a workweek that they worked over forty hours.

Plaintiffs also fail to plausibly allege that their work was compensable because they drove light vehicles more than a *de minimis* amount of time.  As to each Plaintiff, Plaintiffs allege that they "ha[ve] driven a vehicle weighing less than 10,001 pounds" while performing deliveries as an ISP driver for FedEx.  Doyle, D. 14 ¶¶ 3-40; Alleyne, D. 21 ¶¶ 3-147; see Doyle, D. 14 ¶ 49(d); Alleyne, D. 21 ¶ 156(d).  While "no legislature, agency, or Circuit has defined *de minimis*" in the context of the TCA exception to the MCA exemption, see Oddo v. Bimbo Bakeries U.S.A., Inc., 391 F. Supp. 3d 466, 472 (E.D. Pa. 2019), and no district court within the Circuit appears to have done so, here, Plaintiffs fail to plausibly allege that they drove light vehicles for more than a *de minimis* amount of time because their allegations fail to specify any amount of time that they allegedly spent driving light vehicles.  Cf. O'Brien, 956 F. Supp. 2d at 306 (concluding that plaintiff's allegations that he drove light vehicles during "most or all workweeks . . . together with the remaining allegations of the complaint, are enough to state a plausible claim that the plaintiff qualifies as a covered employee under the TCA") (internal quotation and quotation marks omitted).

Without any indication of the amount or proportion of time Plaintiffs allegedly drove light vehicles during their individual tenures as ISPs delivery drivers, Plaintiffs cannot sufficiently allege that they drove light vehicles for more than a *de minimis* amount of time.  Cf. Oddo, 391 F. Supp. 3d at 474 (E.D. Pa. 2019) (concluding that "[b]ecause it is undisputed that Plaintiffs drove small vehicles for 1% or more of their trips during the relevant period . . . they have satisfied the *de minimis* threshold").  Thus, Plaintiffs also fail to plausibly allege that their work was compensable because they drove light vehicles more than a *de minimis* amount of time.[3]

Accordingly, as Plaintiffs have failed to sufficiently allege that they drove light vehicles "in whole or in part" during their tenure as ISPs delivery drivers, they have failed to plausibly allege that they performed work compensable under FLSA's overtime work provisions.  See Pruell, 678 F.3d at 14 (concluding that plaintiffs' allegations only "described a mechanism by which the FLSA *may have been violated*" where they alleged work over 40 hours but "various forms of [that] 'work' may not be compensable") (emphasis in original).

### (2)    Unpaid Overtime Accrued

Moreover, even if Plaintiffs plausibly alleged that each Plaintiff performed work compensable under FLSA's overtime work provision, Plaintiffs fail to plausibly allege that each Plaintiff incurred unpaid overtime work.  While, as Plaintiffs contend, Plaintiffs "'need not allege

---

[3] At oral argument, Plaintiffs relied upon two out-of-circuit cases, Oddo and Guy, to argue that they need not allege that they drove light vehicles "in whole or in part" during a week in which they worked over forty hours to qualify for the TCA exception, so long as their work duties with light vehicles "are sufficient to meet the *de minimis* threshold."  Doyle, D. 101 at 19-20; see Oddo, 391 F. Supp. 3d at 471-74; Guy v. Absopure Water Co., LLC, 728 F. Supp. 3d 527, 545-51 (E.D. Mich. 2024).  Even assuming this is a reasonable interpretation of Oddo and Guy's holdings, Plaintiffs' invocation of Oddo and Guy on this point is unavailing because these cases do not cure Plaintiffs' failure to allege any facts upon which the Court can conclude they drove light vehicles more than a *de minimis* amount of time.

precisely the dates and number of hours worked giving rise to the alleged violation'" to state a FLSA unpaid overtime claims, Doyle, D. 69 at 11; Doyle, D. 80 at 12-13 (quoting Acosta v. Quality Granite & Cabinetry, LLC, 2018 WL 4762260, at *3 (D.N.H. Oct. 2, 2018)), to survive a motion to dismiss, "the complaint must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face,"'" Pruell, 678 F.3d at 13 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  As the First Circuit has recognized, allegations that plaintiffs "'regularly worked hours over 40 in a week and were not compensated for such time'" are "borderline phrases" that "[s]tanding alone . . . is little more than paraphrase of the statute."  Id.  Here, Plaintiffs' general allegations that ISPs delivery drivers "have worked more than forty hours per week delivering packages for FedEx," Doyle, D. 14 ¶ 49(c); Alleyne, D. 21 ¶ 156(c), and each Plaintiff "has not received overtime pay for hours worked beyond 40 hours per week," Doyle, D. 14 ¶¶ 3-40; Alleyne, D. 21 ¶¶ 3-147, "merely parrot the elements" of a FLSA claim.  See Gould v. First Student Mgmt., LLC, No. 16-cv-359-PB, 2017 WL 3731025, at *2 (D.N.H. Aug. 29, 2017) (citing Ocasio-Hernandez, 640 F.3d at 12)).  Thus, these allegations are insufficient to plausibly alleged unpaid overtime work.

Read together with the remainder of the FACs, the FACs do not, as Plaintiffs contend, Doyle, D. 69 at 13-14; Doyle, D. 80 at 14-15, cure this deficiency.  While Plaintiffs allege that they "performed their delivery work on strict and predictable schedules pursuant to FedEx's same-day delivery requirements" that was "dictated by the volume of packages that FedEx required them to deliver each day on their routes," Doyle, D. 14 ¶ 58; Alleyne, D. 21 ¶ 165, they do not specify whether FedEx or their ISPs determined their work schedule, allege that FedEx scheduled each Plaintiff for forty-hour work weeks, identify additional uncompensated work, nor allege that FedEx's pay practices "required [them] to work time for which they did not receive

compensation," either "continuously" or otherwise, see Manning, 725 F.3d at 46-47.  Nor do the

FACs "provide examples (let alone estimates as to the amounts) of such unpaid time for [any]

plaintiff."  See Pruell, 678 F.3d at 14; cf. Chesley v. DIRECTV, Inc., No. 14-cv-468-PB, 2015 WL

3549129, at *6 (D.N.H. June 8, 2015) (concluding unpaid overtime sufficiently alleged where the

complaint does not only allege that plaintiffs routinely worked more than 40 hours, but also

"alleges the approximate number of hours per week each plaintiff worked").

Plaintiffs' argument that their overtime allegations were tied to "specific FedEx policies,"

Doyle, D. 69 at 14; Doyle, D. 80 at 15, is inapposite with their FACs which do not specify any

FedEx policy requiring them to work overtime, but instead make only general reference to working

"pursuant" to FedEx's "same-day delivery requirements," Doyle, D. 14 ¶ 58; Alleyne, D. 21 ¶ 165,

and that FedEx managers and ISPs "micromanaged how Plaintiffs . . . performed their work . . .

pursuant to standards and requirements established by FedEx," Doyle, D. 14 ¶ 59; Alleyne, D. 21

¶ 166; cf. Smith v. United States, 120 Fed. Cl. 455, 457-59 (2015) (noting that plaintiffs'

allegations "regarding his position, dates of employment, and allegations that he regularly worked

fifty hours a week—as well as alleging the existence of policies and guidance" where defendant

"treat[s] all its management trainees as exempt from FLSA's overtime requirements" were

sufficient "to raise the right of relief above the speculative level").  Thus, Plaintiffs have failed to

provide well-pled allegations from which to infer they incurred unpaid overtime work.

(3)     Knowledge

Plaintiffs have also failed to plausibly allege that FedEx knew that Plaintiffs were working

overtime.  The knowledge inquiry under a FLSA unpaid overtime claim "requires an assessment

of what the employer knew or should have known and is to be made in view of the employer's

'duty . . . to inquire into the conditions prevailing in his business.'"  Vitali v. Reit Mgmt. & Rsch.,

17

LLC, 88 Mass. App. Ct. 99, 103 (2015) (quoting Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 512 (5th Cir. 1969)).  "In reviewing the extent of an employer's awareness, a court 'need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge.'"  Id. at 103-04 (emphasis omitted) (quoting Reich v. Department of Conservation & Natural Resources, 28 F.3d 1076, 1082 (11th Cir. 1994)).

Plaintiffs have failed to allege any facts to support the claim that FedEx knew or should have known that they were not paid overtime to which they were entitled.  In Manning, the First Circuit concluded that the plaintiffs' allegations that "the intersection of several BMC employment practices frequently required them to work through their scheduled breaks, before and after work hours, and during training sessions," "[t]his work, often required by defendants, was performed in the open," defendants "knew that their automatic timekeeping system would deduct certain categories of noncompensable time from the employees' paychecks," "plaintiffs had conversations with their managers about their uncompensated work" and "defendants did nothing to account for the extra time worked . . . taken in toto, are sufficient to establish a plausible inference of defendants' knowledge."  Manning, 725 F.3d at 44-45.  Here, Plaintiffs do not, as explained above, allege that FedEx policies required them to work overtime nor that they had conversations with FedEx managers about their alleged uncompensated work.  Nor do Plaintiffs allege that FedEx actively tracked their hours, or that the allegedly unpaid overtime work delivering packages was done on FedEx's premises.  See Doyle, D. 14 ¶ 49(c); Alleyne, D. 21 ¶ 156(c); see also Manning, 725 F.3d at 44; Rueli v. Baystate Health, Inc., 835 F.3d 53, 63 (1st Cir. 2016) (noting that it is "unlikely that plaintiffs can prove actual knowledge of [the hours plaintiffs work] to [defendant]

solely on the basis of the computer logs" where "work at issue was apparently performed by [plaintiffs] off-site . . . away from the immediate gaze of their superiors").

Although Plaintiffs allege that "FedEx requires the drivers to begin and end each day at a designated terminal operated by FedEx," Doyle, D. 14 ¶ 59(f); Alleyne, D. 21 ¶ 166(f), and that "delivery drivers working under ISPs have worked out of FedEx-owned and managed terminals throughout the country, where FedEx managers, package handlers, and other FedEx employees oversee and manage the package delivery operations," Doyle, D. 14 ¶ 56, these allegations, without more, are insufficient to plead actual or constructive knowledge. Cf. Manning, 725 F.3d at 44-45. And Plaintiffs' conclusory allegations that "FedEx knew, or should have known, that Plaintiffs and other drivers were not paid overtime that they were owed," Doyle, D. 14 ¶ 66; Alleyne, D. 21 ¶ 173, does not satisfy their pleading requirements. Pruell, 678 F.3d at 13. Thus, Plaintiffs fail to allege that FedEx had knowledge of any alleged unpaid overtime work.

Plaintiffs' argument that they are entitled to "latitude" in the plausibility standard because certain evidence needed to support their claim "is in [FedEx]'s control," Doyle, D. 69 at 8-9, 11; Doyle, D. 80 at 15-16, does not save their claim. Although the First Circuit has noted that, under certain circumstances, it is appropriate to afford some latitude to the plausibility standard when "a material part of the information needed is likely to be within the defendant's control," García-Catalán, 734 F.3d at 104 (citing Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012) (internal quotation marks omitted)), here, "the missing link that is common to the claims at issue in the case before us has not been alleged 'upon information and belief,' as it was in Menard, see 698 F.3d at 44 & n.5, and is not plausible simply by appeal to common sense, as in García–Catalán, see 734 F.3d at 103." Saldivar v. Racine, 818 F.3d 14, 23 (1st Cir. 2016). Additionally, the First Circuit has not extended such latitude to facts that are generally in plaintiffs' control, such as "what

sort of work they performed and presumably . . . how much they were paid as wages." See Pruell, 678 F.3d at 15.  As demonstrated above, "[h]ere, the gap between the allegations in the complaint and a plausible claim is wider than it was in [the cases in which the First Circuit has applied some latitude to the plausibility standard]." Saldivar, 818 F.3d at 23. Plaintiffs' deficient pleadings are further compounded by the fact that, as Plaintiffs acknowledge, "this is not a case where the parties are starting to litigate from scratch," but is instead "premised on years of parallel litigation." Doyle, D. 69 at 10; Doyle, D. 80 at 11-12; see Saldivar, 818 F.3d at 23 (declining to extend latitude to plausibility standard where "plaintiff was allowed modest discovery before she filed her amended complaint, namely access to [the] record, upon which [her] allegations are based" and still failed to plausibly allege her claim) (emphasis in original).  In short, even if Plaintiffs' pleadings were entitled to some latitude over certain facts needed to state their claim, as explained above, Plaintiffs still fail to plead facts sufficient to plausibly allege their claim.

As Plaintiffs have failed to sufficiently allege not only the threshold element of an employment relationship with FedEx, but also the unpaid overtime element of their FLSA claims, Plaintiffs fail to plausibly allege this claim.

Accordingly, Count I of both actions is dismissed without prejudice.

### B.  Dismissal of Count II:  Declaratory Judgment

In Count II, the Alleyne Plaintiffs seek declaratory judgment that "they were FedEx's employees within the meaning of FLSA." Alleyne, D. 21 ¶ 176.  In accordance with the Court's conclusion that Plaintiffs have failed to provide sufficient facts to plausibly allege that FedEx is their employer under FLSA, the Court concludes that the Alleyne Plaintiffs also have not plausibly alleged that they are entitled to declaratory judgment in their favor based on the allegations presently before the Court.  The Court, accordingly, dismisses Count II in Alleyne.

C.    **FedEx's Motion to Sever**

Courts may "sever any claim against a party," Fed. R. Civ. P. 21, and "[t]he decision to separate parties or claims is a case management determination peculiarly within the discretion of the trial court." Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (internal citation and quotation marks omitted). "When considering a motion to sever under Rule 21, [the First Circuit has] looked to Rule 20, which provides the legal standard for permissive joinder, for guidance." Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc., 121 F.4th 228, 244 (1st Cir. 2024). "As long as the parties meet the test for permissive joinder, courts generally allow joinder unless other considerations such as avoiding prejudice and delay, assuring judicial economy, or safeguarding fundamental fairness counsel otherwise." Abraham v. Allen Mello Dodge, Inc., No. 11-cv-329-JD, 2011 WL 4625686, at *3 (D.N.H. Oct. 3, 2011).

Pursuant to Rule 20(a)(1), "[p]ersons may join in one action as plaintiffs if (A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "Because the joinder rules result in beneficial economies of scale and judicial efficiency by resolving related issues in a single lawsuit . . . the preconditions for permissive joinder are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties." Armendariz v. Sig Sauer, Inc., No. 22-cv-00536-JL, 2023 WL 4204666, *2 (D.N.H. June 27, 2023) (citations and internal quotations omitted). In determining whether severing claims is appropriate under Rule 21, the Court "considers numerous factors, including:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required

for the separate claims." <u>SharkNinja Operating LLC v. Dyson, Inc.</u>, No. 23-cv-11277-ADB, 2023 WL 6796456, at *1 (D. Mass. Oct. 13, 2023) (quoting <u>Depianti v. Jan-Pro Franchising Int'l, Inc.</u>, No. 08-cv-10663-MLW, 2016 WL 4771056, at *2 (D. Mass. Sept. 13, 2016) (citations omitted)). FedEx argues that the claims of the 183 Plaintiffs should be severed because:  (1) they do not arise out of the same transaction or occurrence; (2) no question of fact is common among Plaintiffs; and (3) severance promotes judicial economy and will not result in prejudice to any party.  <u>Doyle</u>, D. 89 at 9-22.

### 1.    *Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence*

"There is no bright-line rule in the First Circuit for determining what falls under the same 'transaction or occurrence' for the purposes of permissive joinder, but the 'logical relationship' test has been applied in the District of Massachusetts."  <u>Ryan v. Newark Group, Inc.</u>, No. 22-cv-40089-MRG, 2024 WL 4815478, *16 (D. Mass. Nov. 18, 2024) (quoting <u>New Sensations, Inc. v. Does</u>, No. 12-10944, 2012 WL 5389921 at *3 (D. Mass. Nov. 2, 2012)).   In the context of permissive joinder, the "logical relationship" test may be met "where there [is] 'substantial evidentiary overlap in the facts giving rise to the cause of action of each defendant,' put another way, 'the defendants' alleged . . . acts . . . share an aggregate operative facts.'"  <u>Id.</u> (quoting <u>Third Degree Films v. Does 1-47</u>, 286 F.R.D. 188, 194 (D. Mass. 2012)).   The "transaction or occurrence" standard does not require "the exact same body of evidence be used to prove all claims for joinder to be proper," <u>Kress</u>, 121 F.4th at 246 (citing <u>Moore v. N.Y. Cotton Exchange</u>, 270 U.S. 593, 610 (1926)), and "Rule 20 requires only that 'any question of law or fact [be] common to all defendants,' not that every question of law or fact be common," <u>Patrick Collins, Inc. v. Does 1–38</u>, 941 F. Supp. 2d 153, 162 (D. Mass. 2013) (emphasis and alteration in original and internal citation omitted).

FedEx offers two recent cases where a court has concluded that former opt-ins to a voluntarily decertified putative class action could not properly be joined in a separate FLSA unpaid overtime action under Rule 20.  See Doyle, D. 89 at 11 (citing Claiborne v. FedEx Ground Package Sys., Inc., No. 18-cv-1698-RJC, 2025 WL 2772339 (W.D. Pa. Sept. 29, 2025); Atwood v. Fed. Express Corp., No. 24-cv-1127-RJC, 2025 WL 2774616 (W.D. Pa. Sept. 29, 2025)).  In Claiborne and Atwood, FedEx moved to sever the claims of FedEx ISPs drivers, which are substantially similar to the claims presented by Plaintiffs here, arguing that they did not arise out of the same transaction or occurrence.  Claiborne, 2025 WL 2772339, at *5; see Atwood, 2025 WL 2774616, at *4.  In particular, FedEx asserted that "Plaintiffs worked for different Service Providers in different states; Plaintiffs were paid differently; Plaintiffs had different interactions and types of interactions with FedEx personnel; Plaintiffs drove different types of vehicles with different weights; and Plaintiffs worked different weekly hours."  Claiborne, 2025 WL 2772339, at *5.  The court there held that "FedEx has more than adequately set forth the distinctions between the Plaintiffs' claims in this case," and concluded that severance was appropriate in both of these matters, as the plaintiffs' claims "do not arise from the same transaction, occurrence, or series of transactions or occurrences."  Id. at *7; Atwood, 2025 WL 2774616, at *5.

Here, FedEx likewise argues that Plaintiffs' claims do not arise from the same transaction or occurrence because "Plaintiffs worked for different service providers across the state of Massachusetts," "Plaintiffs were paid differently, including, in some cases, properly paid overtime by their Service Providers," "Plaintiffs drove different types of vehicles with different weights," Doyle, D. 89 at 11-12 (citing Roy v. FedEx Ground Package Sys., Inc., No. 17-cv-30116-KAR, 2024 WL 1346999, at *2, 9-10 (D. Mass. Mar. 29, 2024)), and "Plaintiffs had different interactions and types of interactions with FedEx personnel and Plaintiffs reportedly worked different hours,"

id. at 12 (citations omitted); see id. at 12-14. Like the plaintiffs in Claiborne and Atwood, here "Plaintiffs have not truly contradicted any such assertion," Claiborne, 2025 WL 2772339, at *7; see Doyle, D. 90 at 11 (acknowledging "differences in Plaintiffs' vehicle weights, schedules, ISPs, and methods of pay"), but instead contend that, despite these differences, they satisfy the same transaction or occurrence requirement because "FedEx's unilateral implementation of an ISP model constitutes a universal 'transaction' or 'occurrence.'" Doyle, D. 90 at 11. This argument, however, was rejected in Atwood and Claiborne, see Claiborne, 2025 WL 2772339, at *6-7; Atwood, 2025 WL 2774616, at *4-5, and Plaintiffs fail to identify any meaningful distinctions here that warrants a different conclusion, see Doyle, D. 90 at 15-16.

Plaintiffs' argument ignores that Plaintiffs' unpaid overtime claims do not arise out of FedEx's alleged use of an ISP model but instead arise out of FedEx's alleged failure to pay overtime for which each of the 183 Plaintiffs is allegedly owed. Doyle, D. 14 ¶ 68; Alleyne, D. 21 ¶ 175. Kress, 121 F.4th at 245 (explaining that "a 'logical relation' between claims exists when 'the same aggregate of operative facts serves as the basis of both claims'") (internal quotation marks and citation omitted). Here, the relevant occurrences and transactions are those surrounding Plaintiffs' unpaid overtime, and the admitted "differences in Plaintiffs' vehicle weights, schedules, ISPs, and methods of pay," Doyle, D. 90 at 11, all of which go to liability in an unpaid overtime claim, see Roy, 2024 WL 1346999, at *10-11, demonstrate that Plaintiffs' unpaid overtime claims "do not arise from the same transaction, occurrence, or series of transactions or occurrences." See Claiborne, 2025 WL 2772339, at *7; Atwood, 2025 WL 2774616, at *5; see Alvarado v. City of Los Angeles, 720 F. App'x 889, 904 (9th Cir. 2018) (severing claims where "Plaintiffs-Appellants do not allege any greater connection between their claims than that the City's employees violated

the FLSA in comparable ways, at various different times, and in various different divisions and bureaus").

Plaintiffs' proffered cases do not compel a different conclusion.  Unlike the cases upon which Plaintiffs rely, Doyle, D. 90 at 8-11, Plaintiffs have not brought claims challenging FedEx's use of an ISP model nor arguing that they were misclassified under it, see Roeder v. DIRECTV, LLC, No. 14-cv-4091-LTS, 2017 WL 11458455, at *3 (N.D. Iowa Feb. 1, 2017) (noting that plaintiffs allege a misclassification claim); Dixon v. Scott Fetzer Co., 317 F.R.D. 329, 332 (D. Conn. 2016) (same); Dowd v. Directv, LLC, No. 14–cv–14018, 2016 WL 28866, at *10 (same); Demarco v. DIRECTV, LLC, No. 14-cv-4623-PGS, 2015 WL 6525900, at *5 (D.N.J. Oct. 28, 2015), thus Plaintiffs' claims do no "arise out of" FedEx's ISP model, even if this model is relevant to the threshold question of joint employment in their unpaid overtime claims.  Further, while the plaintiffs in Plaintiffs' proffered cases identified a "company-wide practice" that allegedly resulted in their alleged FLSA violation, Roeder, 2017 WL 11458455, at *3; see Dixon, 317 F.R.D. at 332; Dowd, 2016 WL 28866, at *10; Demarco, 2015 WL 6525900, at *5, here, "Plaintiffs have not identified a common policy or practice resulting in the alleged widespread failure to pay overtime," Roy, 2024 WL 1346999, at *8.

Accordingly, this Court also concludes that "FedEx has more than adequately set forth the distinctions between the Plaintiffs' claims in this case."  Claiborne, 2025 WL 2772339, at *7; Atwood, 2025 WL 2774616, at *5.[4]

---

[4] Plaintiffs' reference to the consolidation order in this matter "for the purposes of all pretrial proceedings," Doyle, D. 71, D. 90 at 13; see Alleyne, D. 68, is misplaced, as that order has no bearing on whether there has been a requisite showing under Rule 20.

In further support of its argument that Plaintiffs' claims do not arise out of the same transaction or occurrence, FedEx points to the court's decertification order in Roy and contends that the court's finding that the Roy opt-ins claims did not meet FLSA Section 216(b)'s "similarly situated" standard for certification is fatal to Plaintiffs' claim that they satisfy Rule 20's joinder requirement.  Doyle, D. 89 at 10-18; see generally Roy, 2024 WL 1346999, at *4-12.  FLSA § 216(b) allows "similarly situated employees may sue collectively for violations of the rule requiring employers to pay overtime compensation to employees who work more than 40 hours per week."  Venegas v. Glob. Aircraft Serv., Inc., 159 F. Supp. 3d 93, 106 (D. Me. 2016). "Although 'that term [similarly situated] is neither defined by statute nor elucidated by precedent within this Circuit' district courts in the First Circuit generally have applied a three-factor test that considers: '(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which plaintiffs may be subjected on an individual basis; and (3) the degree of fairness and procedural impact of decertification.'"  Roy, 2024 WL 1346999, at *3 (citing Venegas, 159 F. Supp. 3d at 106).  "The 'similarly situated' standard for conditional certification under § 216(b) of the FLSA is, in fact, 'more elastic and less stringent than the requirements found [for Fed. R. Civ. P.] 20 (joinder)'" thus failure to satisfy FLSA § 216(b) suggests that joinder under Rule 20 is also unwarranted.  Botero v. Commonwealth Limousine Serv. Inc., 302 F.R.D. 285, 287 (D. Mass. 2014) (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996); Cruz v. Bristol–Myers Squibb Co., PR, 699 F.3d 563, 569 (1st Cir. 2012)); see id. (concluding that "Rule 20(a) joinder is unwarranted here for substantially the same reasons it denied FLSA conditional class certification"); Loc. 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Auth., No. 13-cv-11455-ADB, 2015 WL 7428537, at *3 (D. Mass. Nov. 20, 2015) (recognizing same).

Here, as noted above, the vast majority of the Plaintiffs in these actions are Roy opt-ins. Thus, the Roy decertification order concluding that the Roy plaintiffs were not similarly situated under FLSA § 216(b) suggests that joinder under Rule 20 is likewise not satisfied.  See Botero, 302 F.R.D. at 287.  In particular, the court in Roy found that there were a "myriad [of] differences among the opt-in Plaintiffs who participated in discovery" demonstrating that they are not similarly situated, including "wide disparities in pay practices," the fact that "[s]ome ISPs paid their drivers overtime . . . and some paid bonuses," "meaningful disparities in the GVWRs of the vehicles driven," and variations "from ISP to ISP" regarding the use of light vehicles.  Roy, 2024 WL 1346999, at *9-10.  These findings suggest that "Rule 20(a) joinder is unwarranted here for substantially the same reasons [the Roy court] denied FLSA conditional class certification."  See Botero, 302 F.R.D. at 287.

### 2.    The Question of Joint Employment Does Not Alone Permit Joinder

FedEx also argues that Plaintiffs present no common question of law or fact for the same reasons as discussed above.  Doyle, D. 89 at 18-19.  In their opposition, Plaintiffs contend, as did the Claiborne and Atwood plaintiffs, that they share the common legal question of joint employment.  Doyle, D. 90 at 11-12; see Claiborne, 2025 WL 2772339, at *5-6; see Atwood, 2025 WL 2774616, at *4.  Even assuming arguendo, without deciding, the question of whether FedEx is Plaintiffs' joint employer is common among the 183 Plaintiffs, this question, alone, does not permit joinder in the absence of a shared transaction or occurrence.  Fed. R. Civ. P. 20(a)(1) (noting that permissive joinder requires plaintiffs to both "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action"); see Roy, 2024 WL 1346999, at *7 (noting that "even if Plaintiffs can prevail on the joint employment question by representative or common evidence, they will only reach the

'starting line'" as "[s]uch evidence would not tend to show that members of the provisional collective are similarly situated with respect to a consistent decision, policy, or practice that caused them to be deprived of overtime pay") (internal citation omitted); see Claiborne, 2025 WL 2772339, at *6; see Atwood, 2025 WL 2774616, at *4.

### 3.    Different Witnesses and Proof Is Required For Each Claim

Moreover, "because Plaintiffs have not identified a common policy or practice resulting in the alleged widespread failure to pay overtime, their claims of reliable representative evidence fall short." Roy, 2024 WL 1346999, at *8.  Although Plaintiffs assert that FedEx "uniformly tracks and maintains scanner data" for all ISPs delivery drivers, Doyle, D. 90 at 6, which can be used as evidence of "FedEx's liability to each Plaintiff," id. at 12, Plaintiffs concede that there are "differences in Plaintiffs' vehicle weights, schedules, ISPs, and methods of pay," id. at 11.  Thus, each of Plaintiffs' unpaid overtime claims would require separate evidence to establish liability. See Roy, 2024 WL 1346999, at *10 (noting that Roy Plaintiffs, "who have the burden of proof by a preponderance of the evidence, have not shown that they can present common or representative evidence to establish that they 'worked more than forty hours per week (for liability purposes), how many hours over forty [P]laintiffs worked (for damages purposes), [or] how many drivers were paid (to show they were not paid overtime)'") (internal citation omitted)).  Further, as Plaintiffs worked for different ISPs, Doyle, D. 89 at 11-12, there will likely be differences in the witnesses needed for each individual claim, see id. at 12; see also Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 522 (5th Cir. 2010) (affirming denial of mass joinder of approximately 800 FLSA plaintiffs seeking overtime pay and providing "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims").

The differences in witnesses and physical evidence needed for each claim too weighs in favor of severance.

4.    *Judicial Economy Favors Severance and the Parties Will Not Be Prejudice*

Finally, severance of these cases will promote judicial economy and will not prejudice either party.  Although, as Plaintiffs note, Doyle, D. 99 at 16, judicial economy weighs against severance where severance would result in "the same evidence would have to be presented in numerous separate trials," Archer v. Schlumberger Tech. Corp., No. 20-cv-00057-DC-RCG, 2020 WL 9814150, at *3 (W.D. Tex. Dec. 2, 2020); see Lobster 207, LLC v. Pettegrow, No. 19-cv-00552-LEW, 2024 WL 5112020, at *1 (D. Me. Dec. 13, 2024) (finding that "[j]udicial economy weighs heavily against conducting two trials" where "a separate, more consolidated trial . . . would amplify the burden on the court and the other parties and would necessitate a considerable duplication of effort"), as explained above, here Plaintiffs' claims rely upon different evidence and witnesses.  Moreover, where "[e]ach plaintiff has alleged events involving different actors circumstances . . . [c]ombined litigation of these claims would 'devolve into "scores of mini-trials involving different evidence and testimony"' regarding each [plaintiffs] factual circumstances'" and "[k]eeping these claims together would not economize the court's time."  Alston, 2016 WL 5745091, at *14 (quoting Botero, 302 F.R.D. at 287 (citing Patrick Collins, Inc., 941 F. Supp. 2d at 165)); see Claiborne, 2025 WL 2772339, at *8 (noting that "the simple truth of the matter is that the separation of Plaintiffs' claims . . . will simplify issues and allow for speedier resolution").  Thus, judicial economy too weighs in favor of severance.

As to prejudice, Plaintiffs' prejudice argument again ignores the reality that each of the Plaintiffs relies upon, and thus must present, separate evidence to support their unpaid overtime claim.  As such, keeping Plaintiffs joined would not avoid the need to produce individual evidence

to establish liability nor avoid duplicative evidence, testimony and costs.  Additionally, as the court in Claiborne and Atwood noted regarding the twelve- and two-plaintiff actions before it, "[a] single trial with multiple distinct claims [] presents ample opportunity for juror confusion."  Atwood, 2025 WL 2774616, at *6; Claiborne, 2025 WL 2772339, at *8.  That concern is even more salient here for the 183 Plaintiffs that comprise the present actions.  Thus, the prejudice factor also weighs in favor of severance.

For the aforementioned reasons, the Court grants FedEx's misjoinder motion and dismisses all Plaintiffs but the first named plaintiff (Doyle and Alleyne) in each of the respective actions in accordance with Fed. R. Civ. P. 20 and 21.  See Alvarado, 720 F. App'x at 903-04 (affirming the dismissal of "all plaintiffs but for the named plaintiff" where the district court allowed Defendant's motion regarding misjoinder); see also Acevedo, 600 F.3d at 522 (noting that proper remedy in a misjoinder case is not "dismiss[al of] this entire action, rather than simply dismissing the claims of any misjoined plaintiffs").[5]

### D.    FedEx's Motion to Transfer

Having determined that severance of Plaintiffs' claims is appropriate given that Doyle's and Alleyne's respective unpaid overtime claims (Count I) were dismissed without prejudice to amend, the Court next considers FedEx's motion to "transfer venue to each Plaintiff's corresponding division based on where they worked."  Doyle, D. 89 at 25.  As a preliminary matter, FedEx relies upon 28 U.S.C. § 1404(a) as the basis for its transfer motion, id. at 22, and Plaintiffs oppose the motion under the same statute, Doyle, D. 90 at 17-21.  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses" and "in the interest of justice," a court "may

---

[5] Both Doyle and Alleyne will remain before this Court consistent with the prior consolidation order for all pretrial proceedings.  Alleyne, D. 68; Doyle, D. 71.

transfer any civil action to any other district or division where it might have been brought."  Here, there is no dispute that both actions are properly within the District of Massachusetts.  See Doyle, D. 89 at 22-25; Doyle, D. 90 at 17-21.  Although at least one session of this Court have noted that a case filed in the District of Massachusetts can be transferred to another division within the District under 28 U.S.C. § 1404(a), Baxter v. Conte, 190 F. Supp. 2d 123, 130 (D. Mass. 2001) (noting that "[a] party may transfer a case to another division under (1) Local Rule 40.1(F) for good cause shown and (2) under 28 U.S.C. 1404(a)"), more recently, other judges of this Court have suggested that 28 U.S.C. § 1404(a) does not apply to requests to transfer between divisions within the District of Massachusetts, and have applied this Court's Local Rules ("L.R.") to resolve such intra-district division transfer motions.  McKeague v. One World Techs., Inc., No. 14-cv-14438-NMG, 2015 WL 12967853, at *1 (D. Mass. July 21, 2015); Karp v. Gap, Inc., No. 13-cv-11600-TSH, 2013 WL 5816555, at *1 (D. Mass. Oct. 23, 2013); H1 Lincoln, Inc. v. Anjos, No. 19-cv-10397, 2019 WL 13234781, at *2-3 (D. Mass. Apr. 29, 2019); Holmes v. Meleady, 738 F. Supp. 2d 196, 199 (D. Mass. 2010).  The Court agrees with these recent cases and thus looks to the Court's Local Rules to address FedEx's motion to transfer venue to it applies to the remaining Plaintiffs, Doyle and Alleyne.

L.R. 40.1(d)(1) governs the assignment of civil cases to the three divisions within the District of Massachusetts:  the Eastern Division, the Central Division and the Western Division. As relevant here, "[c]ivil case shall be assigned to the respective divisions if":  "(A) [a]ll of the parties reside in that division"; "(B) [a]ll of the parties reside in the District of Massachusetts and the majority of the plaintiff(s) reside(s) in that division"; or "(C) [t]he only parties residing in the District of Massachusetts reside in that division."  L.R. 40.1(d)(1)(A)-(C).  As to Doyle, it is alleged that he resides in and worked for FedEx in Massachusetts.  Doyle, D. 14 ¶ 3.  The same

allegations are made as to Alleyne.  Alleyne, D. 21 ¶ 3.  FedEx allegedly operates "nationwide and within Massachusetts," see Doyle, D. 14 ¶ 45; Alleyne, D. 21 ¶ 152.  On the present record where there is no suggestion for the purposes of L.R. 40.1(d) that the remaining Plaintiffs are not in the correct division, the Court DENIES the motion to transfer.

      **E.**    **Plaintiffs' Request for Leave to Amend**

      In their oppositions to FedEx's motions to dismiss, Plaintiffs seek leave to again amend their complaints to supplement facts.  Doyle, D. 69 at 16; see Doyle, D. 80 at 26 n. 4.  Pursuant to Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires."  Amendments should be liberally permitted in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).

      *1.*    *Plaintiffs' Request For Leave To Amend as to Count I*

      To the extent that the Court has dismissed Count I, the FLSA claim, without prejudice, it turns to Plaintiffs' motion to amend.  In Doyle, Plaintiffs specifically propose amending paragraph forty-nine of their FAC "to clarify that 'they worked more than 40 hours per week *and* did not receive overtime pay from their service provider, *and* were driving a truck weighing less than 10,001 pounds,'" Doyle, D. 69 at 16-17 n. 2 (emphasis in original); see Doyle, D. 14 ¶ 49, and generally propose amending their complaint to "supplement facts that will permit them to pursue their [FLSA] claims," Doyle, D. 69 at 16.  FedEx does not oppose the Doyle Plaintiffs' general request, but argues that their proposed amendment to paragraph forty-nine is futile because it will not cure their deficient pleadings.  Doyle, D. 75 at 16.  Under Rule 15(a), "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the

district court acts within its discretion in denying the motion to amend." Bos. & Me. Corp. v. Town of Hampton, 987 F.2d 855, 868 (1st Cir. 1993), overruled on other grounds by Educadores, Puertorriqueños en Acción v. Hernández, 377 F.3d 61 (1st Cir. 2004). The Court agrees with FedEx that the Doyle Plaintiffs' proposed amendment to paragraph forty-nine would not cure the deficiencies of their complaint, and to the extent that Doyle seek leave to amend only to amend as so, that request is denied. The Court will, however, grant Doyle's general request for leave to amend their FAC to supplement the facts underlying their FLSA unpaid overtime claim, Count I. To the extent that Alleyne seeks to amend Count I, FedEx does not appear to oppose that request and the Court allows that motion.

2.    *Alleyne's Request For Leave To Amend Count II*

To the extent that Alleyne seeks to amend Count II, the Court DENIES that motion for the reasons articulated in FedEx's opposition, Doyle, D. 87 at 24; see id. at 17-22, and explained above as to the dismissal of Count II with prejudice.

F.    **Conclusion**

For the reasons stated above, the Court ALLOWS FedEx's motions to dismiss. Doyle, D. 67; Doyle, D. 76 as follows: Count I (the FLSA claim) in both cases is dismissed without prejudice; and Count II (the declaratory judgment claim) in both cases is dismissed with prejudice. The Court further ALLOWS FedEx's motion to sever and DENIES FedEx's motion to transfer. Doyle, D. 88. Accordingly, all plaintiffs except lead Plaintiff Doyle and Alleyne will remain in this case. If either Doyle and/or Alleyne seek leave to amend Count I, they must file a motion by February 11, 2025.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge